We'll move to the second case of the day, Equal Employment Opportunity Commission v. Charter Communications, LLC. That's number 22-1231. You sure? Thank you. Good morning, Your Honors. Chelsea Sharon on behalf of the EEOC. May it please the Court. This case is about Charter's refusal to provide a simple shift accommodation to allow James Kimmons to travel safely to and from the workplace despite his cataract-related night blindness. This is a quintessential reasonable accommodation under the ADA. The ADA specifically contemplates accommodations that are needed to allow ready access to the workplace, and it specifically lists modified work schedules as an example of a reasonable accommodation. And the ADA's legislative history makes clear that Congress intended to extend this accommodation to disabled employees whose disability-related limitations made it difficult for them to get to and from the workplace. The District Court, Your Honors, reached a contrary conclusion by misreading and misapplying this Court's decision in Broomfield v. City of Chicago. Under the District Court's view, if an employee is able to perform the essential job functions once inside the workplace, they have no entitlement to an accommodation designed to allow them to get into the workplace to begin with. So let me ask you this question. Is it the Commission's position that, unlike, for example, the Fair Labor Standards Act, that the employee's ability just to get to the job site, to the workstation, to the job site, whatever it may be, and leave again is, in fact, an essential function of the job? I'm thinking about cases such as NOAC against St. Rita High School where we said, obviously an employee who does not come to work cannot perform the essential functions of his job. And we have other cases where we've said maybe the most essential function of your job is to be able to show up. Yes, Your Honor. I don't think that we would agree that in every case attendance is an essential job function. Obviously technological advances have made it possible for many employees to work remotely. In this case, there was no allegation that Mr. Kimmins or that charter would allow him to perform his work remotely, so that's not an issue here. But I do think that those cases recognize the straightforward proposition that getting to the place where your work must be performed is inherently linked to performing the job itself and recognizes that straightforward connection. So would you say if you thought that being able to get to whatever the job place was, and I fully appreciate your point about remote work, but there's no indication that that's an issue here, that that itself is an essential function of the job as Broomfield was looking at this issue? Or do we need to tinker with Broomfield before we can agree with you? I don't think that you need to tinker with Broomfield before you can agree with our position, Your Honor. I think that whether you characterize it as an essential job function itself getting to the workplace or as relevant to the performance of essential job functions under the test that Broomfield articulated, that it would fall within the scope of Broomfield's holding regardless. Has any court held otherwise? Has any circuit court held otherwise? Held that getting to the workplace is not related to essential job functions? Yes. Not that I am aware of, Your Honor. What do you make of the Tenth Circuit's decision? In Unrhine, I believe it is? In Unrhine? Yeah, I'm not sure how you pronounce it either. In that case, Your Honor, the employee was requesting to be relieved from performance of an essential job function, so the conclusion that it was, I'm sorry, Your Honor, that it was, as a matter of law, unreasonable stemmed in large part from the fact that the employee said, listen, I would like to show up to work when I can on an unpredictable, entirely flexible schedule. The employer said that that asked to be relieved from being at work on a predictable schedule, which in the case of, I believe she was a dietician, was found to be an essential function of the position. So what do you make of the argument that, in essence, Mr. Kimmon's problem, in essence, is one of his own making? His choice is about where to live. Your Honor, the ADA in our position does not impose any duty to mitigate on disabled employees who experience disability-related limitations getting to and from work. Okay, so how far does this go? All right, I mean, a daily Uber for an employee who has difficulty driving and has a tough commute? Well, I think, Your Honor, that would be a question of reasonableness, and here, Charter has not claimed that this was not feasible, that it would cause undue hardship, that it would be financially expensive. In fact, Mr. Kimmon's is not asking for any financial assistance with his transportation. Well, I'm asking you. Yes. You seem to be asking us to open up a whole new realm of accommodations going well beyond, in essence, the employer's job site, and saying, in essence, I guess, just trust us to be reasonable. Your Honor, I think that this court's case law makes clear that every accommodation is going to be analyzed on a case-by-case basis for reasonableness. There's no reason that commute-related limitations or disability-related limitations getting to and from work should be any different. So if you look, for example, at this court's decision in Joachim v. Chloe, that case dealt with commute-related limitations. This court carefully looked at the accommodations the employer had offered to see if they were sufficient and reasonable and said that the employee had asked for too much in that case and that the solution that the employer and employee reached through the interactive process was sufficient to address her limitations getting to work. Well, my concern here is, as I say, this looks to me like a vast new area of accommodations that have not been recognized very often. I grant you you've got Lyons and Corwell from the Second and Third Circuits, but we have the EEOC taking the position in 2001 that commuting is really not the employer's obligation, right? I would disagree with that characterization, Your Honor. In the decision discussion letter that charter cites, there were two separate points. The EEOC did mention that an employer is not necessarily obligated to furnish assistance with transportation itself in the sense of subsidizing the commute itself, but specifically stated that modified work schedules and aspects within the worker's control here, the scheduling of shifts, could be needed to promote access to transportation. With public transportation options, yes. But I'm trying to think a little bit about, in essence, the lawmaking and political process that went into the ADA and all of its regulations. And I would have thought that if anybody was intending and contemplating the kind of obligations that you're talking about here, there would have been much larger paths blazed in the legislative history, in the language of the statute, in the EEOC's own regulations that would have drawn all kinds of fire from the Chamber of Commerce and everybody else, and we don't see that. So, as I say, this strikes me as a very big deal that doesn't have much behind it. Well, Your Honor, I would point out that we do cite two legislative history that very clearly speaks to the need to address disability-related limitations. So you have a statement about... The whole law is about disability accommodations, but the only references to commuting are to public transportation schedules. And even that's just the legislative history. No, I understand it's the legislative history, Your Honor, but we do cite two pieces of legislative history that refer specifically to commuting. In our reply brief, we cite two statements that talk about the need to break down barriers accomplished by other non-disabled employees with ease that include commuting specifically as an example. In our opening brief, we discuss how the legislative history specifically refers to providing modified work schedules to promote access to public transportation for disabled employees. And I would point out that the statute itself in 12-119-A speaks to the need in defining reasonable accommodations, speaks for the need to make the workplace readily accessible to individuals with disabilities. And this court, for example, in Falar and Sears, has applied that provision to commute-related accommodations, saying that those could fit within the framework of an accommodation that's needed to make the workplace readily accessible. So do you need accommodations that can be accomplished by the employer at the workplace, such as a schedule shift? When I read your briefs, I was struck with how heavily you're relying. Maybe this is fine, maybe not, but how heavily you're relying both on the notion that any accommodation has to be reasonable, number one, and how heavily you're also relying on the notion that any accommodation cannot inflict on the employer undue hardship. It seems to me if you're saying accommodations for the employer need to be capable of being implemented at the workplace, it's not up to the employer to decide how much public transportation there is in Racine. It is what it is. But is that what you're saying? I don't think we've categorically taken the position that an employer could never have an obligation that falls outside the workplace. But here, as the Third Circuit explained in Cole, the scheduling of shifts is clearly entirely within the workplace. It's entirely within the employer's control. So you're not presented with a question where the employer is being asked to extend outside the four corners of the workplace. And I point out that in our interpretive guidance, we do clarify that the accommodation needs to be job-related. It can't be for the personal benefit of the individual on and off the job. So an employer doesn't, for example, have an obligation to purchase a wheelchair for an individual that they're going to use both at the office and outside the office. The accommodation really needs to be tied to the needs that arise. Let's go back to the employee's choice about where to live, right? Yes, Your Honor. But I'll point out that in decisions like Colwell and Lyons and this Court's decision in Fuller, there was never any suggestion that the employees in those cases could presumably have also mitigated their commute-related limitations by choosing to pay for their own transportation or choosing to move closer to the workplace. What about the Hooper case? What about the Hooper case where the court noted that the plaintiff there couldn't unilaterally resolve the impact? I'm sorry, can you clarify which one? Hooper where the court said that he could not unilaterally resolve the effects of his disability? Yes. Suggesting here that he could move closer and impact it. I would point out, though, that a rule, first of all, in looking at disability and the question of coverage under the Act, the 2008 amendments was clear that we don't take into account mitigating measures. But also that this mitigating measures rule that kind of Charter proposes would be limitless in the commute context. It would just eliminate all such accommodations from the statute entirely because where's the limiting principle? An employee could always move theoretically next to the workplace, and then they would have no commute-related limitations. Would that be part of the reasonable accommodation analysis? Yes. Exactly, Your Honor. And the whole point of the reasonableness inquiry and of the interactive process is to look at what the employer thinks is reasonable, what the employee thinks is reasonable. It's a give-and-take process to figure out, you know, maybe they adjust Mr. Kimmon's schedule by one hour, and then he can access public transportation. Or maybe there's a solution where he is living and racing for part of the time, and then he moves to Milwaukee. But there's a give-and-take. And here, Charter just flatly refused to consider any other accommodation requests beyond that, just rejecting the 30-day extension that Mr. Kimmon's asked for. And, Judge Hamilton, just to address your concern about limiting principles, I'll just point out that the question of mitigating measures is something, for example, in Joachim versus Carson, did look at what the employee could do to make the process better. So the employee was insistent on telework. They said, listen, we're giving you this accommodation so that you can better access public transportation. And the court found that that was reasonable, even though the employee preferred the telework. So the employer does not have to provide the preferred accommodation. The question of what is reasonable or not, what would impose undue hardship or not, can be worked out on a case-specific basis without creating this kind of per se bar on commute-related accommodations. Okay, so let's talk about driving at night. People over, what, the age of 40 are vulnerable to cataracts? Are all of us entitled to ask for work schedules where we don't have to drive at night? No, Your Honor. The question under the Act is whether the employee in question is substantially limited in a major life activity. Here we've got one doctor who basically seems to say no, and one doctor who seems to say yes. So one doctor, good idea not to drive at night. That's enough. Your Honor. And one other question about this. If I understand the geography and the astronomy here correctly, much of the year Mr. Kimmons would have to drive in the dark at least one way if he has an eight-hour shift. Yes, Your Honor. And that turning to the second part of your question first, that is why part of the need for the accommodation was to allow access to public transportation. So during the months when he would not be able to have full daylight for a commute, he would be enabled to access public transportation when he's not ending his shift at 9 p.m. when the public transportation options were unavailable. And with respect to your question about the disability, I just want to point out that charter tries to make the question whether Mr. Kimmons is substantially limited in all of his daily activities. After the 2008 amendments to the ADA, it's very clear that that's not the question. The question is whether his sight is substantially limited, and there's no obligation to show a limitation in any, all and every activity that relates to seeing. That's very clear from the 2008 amendments. Here we do have a limitation in driving. Thank you, Your Honor. I appreciate it. For the defense, Mr. Peterson. Thank you, Your Honor. May it please the Court. Judge Hamilton, we agree that this case at least has the potential to be a big deal. But I hope to offer you a few ways of resolving it in which it will not be quite as big a deal. When you do so, I'm a little concerned that we might be losing focus on this case because the accommodation on the table is a 30-day extension of the shift change to enable Mr. Kimmons to arrange for a move to Milwaukee so that the appropriate public transportation will be available. This case is not about whether Mr. Kimmons for all times is going to be able to dictate to Charter Communications the hours that he wants to work. We just have this one accommodation, and Charter wouldn't work with him on it. So I'm worried that your position also excludes people who need a parking place close to the building. It excludes people who might need to have access to public transportation. And I don't understand why it's so scary as long as the reasonable accommodation and undue hardship limitations, which are squarely in the statute, to trudge around and find the legislative history, why those don't do the work that needs to be done to make sure this doesn't spin out of control. Well, in part, we tie this back in to the black letter principle of the ADA, that employees are not entitled to the reasonable accommodation of their choice. Well, of course. But there's an interactive process. I don't disagree with that at all. It's well established. But Mr. Kimmons suggested an extension of that first 30 days off. And Charter just said, you know, your commute isn't our problem. And I'm concerned that that, as a matter of law, is inconsistent with the cases that I was mentioning earlier, Novak, Jovanovich, Wagoner, Tyndall, quite a few cases that indicate that getting to your workstation is, in fact, an essential part of your job for most things. Now, maybe today in 2022, there are jobs that Charter has that can happily be done remotely. That's not this record as I understand it. So I'm assuming you need to be there. Your Honor, I have a fantastic answer to that. And it's forfeiture, which is the argument that my friend gave this morning is likely an argument that should have been given to the district court to argue that getting to the workplace. I don't see this as forfeiture. We're talking about the legal issue here that I don't see a forfeiture. Well, I'm looking at page 18 of my friend's response to the motion for summary judgment in the district court where they did not say that Mr. Kimmons' commute, his arrival at work, his attendance was related to an essential job function. What they said was that employers must provide accommodations that are unrelated to essential job functions. They took a firm position in the district court to say that the need to provide accommodations exists, no matter whether there is any relationship to an essential job function whatsoever. I didn't read them as quite that broad. I think they were looking at Broomfield and Broomfield seemed to be saying, maybe it doesn't say this, but a way of reading Broomfield is to say that the quote, essential functions of your job might be, you know, being adept with Excel spreadsheets or an essential function of your job might be, you know, the ability to perform a good audit on corporate books or something like that. Like once you're sitting there at your desk or once you're on the assembly line, can you do the job? Viewed that way, getting to work might be something different. And I understood the commission to be saying one way or the other though, you've got to get to work. And if you're going to define essential functions of the job in the extremely narrow way that Broomfield might have done, then that's one thing. If the concept is the broader one that I'm suggesting our earlier cases is, then you have something else. But I think the gist of the commission's argument has been quite clear all along. I think I agree with my friends reading that Broomfield doesn't necessarily foreclose the argument that getting to the job is an essential job function. Now that doesn't answer the question of whether commute related accommodations are reasonable, but when you look, but when you say commute, let's say getting to the job, if suppose you have an employee limited to a wheelchair who lives in a high rise building, you know, half a mile down the street from the job site that person still might need some accommodations. They might need, you know, an appropriate ramp into the building. They might need some other kind of assistance to be able to go down the hall to, you know, a door of a certain width. There, there are various things.  I mean, I don't want to get into the person trudging out the door in the morning and getting in the car and going out onto the highway. And that, that isn't really what we're talking about. We're just talking about the ability to show up. Respectfully, Your Honor, I think I disagree that there is only one category of getting to show up. We see employee access to the workplace as fundamentally different in kind than assistance with commute decisions that are well based on where the employee chooses to live. But he was asking for help with that very thing. I mean, you have a lot of like side arguments that I think all raise disputed issues. In fact, but he's trying to change his place of residence so that the Milwaukee bus system will take care of him no matter what the time of the shift or even, you know, if he has an earlier shift, I understand that to be able to get from Milwaukee back down to Racine after nine o'clock is hard, but it may be easy at seven, you know, there are all sorts of things. Let me suggest we think about who the comparator should be in this regard because one of the differences between your wheelchair example and the example of Mr. Kimmons is your employee in the wheelchair is differently situated than a non-disabled employee in that same position. Whereas take Mr. Kimmons and compare him to any other charter employee who chooses not to drive themselves to work. But they hear the critical word is choose. You are making an assumption of fact that Mr. Kimmons is cataracts are mild enough that it's safe for him to be on the road. And I'm not sure that you're even right as a matter of Wisconsin law. There are comments on the Wisconsin Department of Transportation website about progressive eye conditions such as cataracts that show that the state authorities do view this as something that may require special restrictions. So he may be exactly like the wheelchair person. We don't know yet. These would be facts to be developed. But the point is there any number of employees who don't drive for any number of reasons they may not know. But maybe they maybe that was their choice. Whereas in his case if it's a physical disability think of all those monocular vision cases. I mean they're they're cases or people you can't fix cataracts as you I'm sure know by a better glasses prescription. That's right. They're not fixable that way. But let me turn to the evidence about his disability because we do think before you do that. I want to clarify. You were saying that Ms. Sharon had raised a new argument this morning. Do you agree with her that getting to the place where your job must be performed is essential to doing the job. Your Honor I think that would be a difficult argument for us to answer. It's not one we were called upon to answer previously and I'm not prepared asking you now. Yeah. I'm asking you now answer now anyway. Yes. We believe it would be not essential to do the job but related to performing the essential functions to show up at work. So the ADA clearly contemplates schedule changes as a form of accommodation and it gives employers the defense that a requested accommodation is unreasonable or would impose an undue hardship. Why is that not sufficient to manage this situation. We see two predicates to this. First under Broomfield you need to be an otherwise qualified individual with a disability which means that you must need that reasonable accommodation. Well wait a minute. But there's some discussion about what that means in the briefs. The commission argues let's say for somebody to work at your law firm otherwise qualified the person undoubtedly needs a J.D. They probably need to have passed a bar exam that kind of thing. And so if a person with a J.D. who's passed a bar exam needs accommodations whether it's at the workplace or whether it's schedule shifts or whether it's ramps then you need to make those accommodations. Maybe they don't need other accommodations. They're still disabled. Maybe you just need to give them you know if they have a hearing problem some sort of translation equipment on their desk. But the otherwise qualified the commission argues just means you do have like the academic the experiential criteria that are needed for this job and the commission's failing to take the statutory text seriously. It's not the phrase otherwise qualified. If you look 42 USC 1 2 1 1 1 8 defines the phrase qualified individual. So we have the statutory phrase qualified and it says with or without accommodation. That's right. And Broomfield says that statutory definition of qualified individual as a whole is modified by the word otherwise. But that's the problem with Broomfield. If you read Broomfield to mean that you're only a qual if you're you're only entitled to an accommodation if you if you need an accommodation. I mean it just doesn't make any sense if that's what otherwise qualified mean you're you can be a qualified individual with or without an accommodation. We certainly agree with that. But the word otherwise needs to and that's why the commission reads it more narrowly to say you know you do tick off the the let's just say neutral criteria for the job JD for your your associates or the bar exam. Well I understand that but they're relying on the phrase otherwise qualified there. What they're not doing is what Broomfield did which is giving effect to the definition of qualified individual. They're taking that defined phrase in the statute in half and asking what the meaning of otherwise qualified is. But what's wrong with that. I mean it seems quite sensible to try to give effect to every word in the statute. I think it would give effect. But when the statute contains a definition qualified individual we do believe you need to read that definition as a whole and you can't split the defined phrase. So some qualified individuals do need an accommodation and some qualified individuals don't need an accommodation. Yes Your Honor. And Broomfield says that when that's modified by otherwise it then becomes limited to. Well that's where Broomfield is. If you read it that way it's questionable. What about the EEOC's argument that otherwise is just put in there to remove any doubt that you have to have the skill to do what you need to do in order to get the accommodation. It's an odd reminder there. I'm not sure how otherwise can be read as anything but somewhat limiting under these circumstances because certainly those individuals. Why not just reinforcing. I'm sorry Your Honor. Why not just reinforcing as opposed to limiting. I think it's an odd use of otherwise when applied to that statutory definition of with or without. I'll also note this is not a case where you've seen the other circuits closely engage with this statutory language in the way that Broomfield did. And I'll say I think the other circuits have also recognized the link between the need to perform essential job functions and the need for accommodations. You see this in D'Onofrio the 11th Circuit's case about the accommodations of a deaf employee. What do you make of the Hill case from the D.C. Circuit where a person is able to do the essential job functions but it's more painful than it needs to be. Judge Hamilton we're very happy with Hill. We don't think Broomfield in any way forecloses to read perform the essential functions as perform the essential functions without pain in an appropriate case. It's perfectly acceptable for this court to add that qualification in there if we think it would not be a sensible reason to say if you could perform the essential functions. On what textual grounds? It would be what it means to perform the essential job functions. And I think a court could comfortably say if you can only perform the essential job functions with pain you cannot truly perform the essential job functions within the meaning of the ADA. So if you would like to adopt Hill's rule we'd be very happy with that. There's no suggestion here that Mr. Kimmons could only perform those essential job functions with pain or with difficulty. It's not pain. What he's saying is the essential function of getting to and from work is something that he can do only in the face of unwarranted danger on the highways. And Your Honor the uncontroverted evidence in the record here is that between September and January when he worked for charter until he was terminated for reasons unrelated to his alleged disability he successfully got himself to work. That doesn't mean it was safe. I mean I've seen plenty of people driving who shouldn't be out there. That's right but it's the EEOC's burden and there's no evidence in the record that it was unsafe. Because this is at a preliminary stage. Doesn't that go to the question of the disability under the ADA as opposed to whether or not a reasonable accommodation should have been given. We think it goes to both Your Honor. So there's a question of disability whether he was substantially limited in the major life activity of seeing. I didn't have a chance to recite it for you. You know the evidence of the record. Judge Hamilton I'll tell you we don't think there's any doctor who actually said he was substantially limited. And when you look at the comparison to the population as a whole the only evidence we have is testimony of Dr. Bruce Saban. The cataracts are an extremely common condition that affect everyone as they get older. I'd like to ask you one more time a question about why statutory provisions that accommodations be reasonable and not impose an undue hardship on an employer are not a sufficient protection of employers interests against what I will just loosely call overly expansive demands for help with community. Thank you. I would point you to this court's decision in Hooper and the 11th Circuit's decision in D'Onofrio. Both of those were circumstances in which the employee was fully capable of doing their job. In D'Onofrio with the video remote interpretation technology that the employer had provided in Hooper without any accommodation whatsoever the employees said I would like more accommodation not because I need it to do my job but because I would like it. And in both cases the court said we go back to this black letter principle that you can receive accommodations related to your ability to do your job but not always your preferred accommodations. And sometimes the answer is no accommodation. But you all are saying no accommodation. And that was what this court said in Hooper. You had an employee who could do his job. His doctor suggested accommodations that would allow him to do it with less stress and the court said you're not entitled to accommodations just because you are disabled and you ask for them. There has to be a link between those accommodations and your ability to do your job. But you're happy with Hill. We can live with Hill if there's pain points. I think we have your views, Mr. Peterson. Thank you. And then Sharon, I'll give you two minutes of rebuttal. Thank you, Your Honors. I appreciate the two minutes. Your Honor, just pointing briefly to the question in Hooper and D'Onofrio that opposing counsel just mentioned. In D'Onofrio I just want to point out that the question was not presented at all whether an accommodation could be needed for purposes other than essential job functions. In that case that statement was simply dicta and the court went on to conclude that the accommodations that had been provided were reasonable so there was no need to address. There's no dispute that the employee there did need the accommodation for essential job functions. I took my opposing counsel to be agreeing that in this case the need to get to work does relate to an essential job function under Broomfield. So even we don't disagree that Hooper reiterated the holding of Broomfield, but the question is where Mr. Kimmons would fall within that analysis. And I take my opposing counsel to be agreeing that an accommodation that is needed to allow safe access to the workplace would be relevant to essential job functions under that test. And unless there are any further questions, Your Honors, I'm happy. Thank you very much. All right. Thanks to both counsel. The case is taken under advisement.